**PALM BEACH ATLANTIC COLLEGE, INC., Plaintiff–Appellee, Cross–Appellant,**

v.

**FIRST UNITED FUND, LTD., Stanmar Corporation, Mario Renda, Defendants–Appellants, Cross–Appellees.**

No. 89–5421.

United States Court of Appeals, Eleventh Circuit.

April 22, 1991.

Stuart M. Steinberg, Law Offices of Stuart M. Steinberg, Mineola, N.Y., Edward C. Schmidt, Rose, Schmidt, Hasley & DeSalle, Pittsburgh, Pa., for defendants-appellants, cross-appellees.

Daniel H. Jones, Law Offices of Daniel H. Jones, West Palm Beach, Fla., for plaintiff-appellee, cross-appellant.

Before EDMONDSON and BIRCH, Circuit Judges, and RE *, Chief Judge.

RE, Chief Judge:

In this action to recover money due under a contract for the sale of a motor yacht, defendants-appellants, Mario Renda and First United Fund, Ltd., appeal from a judgment of the United States District Court for the Southern District of Florida which, after a jury trial, entered judgment against Renda for civil theft and fraud, and against First United for breach of contract, civil theft, and fraud. The jury awarded the College $200,000 in compensatory damages from First United for breach of contract. The jury also awarded punitive damages of $300,000 against Renda, and $150,-000 against First United, on the basis of fraud. The court, in its final judgment order, trebled the jury's award of compensatory damages, on the basis of the jury's finding of civil theft.

Contending that the notice of appeal was not timely filed, the College cross-appeals.

* Honorable Edward D. Re, Chief Judge of the U.S. Court of International Trade, sitting by designation.

On appeal, First United contends that there was insufficient evidence for the jury to find that the College was a party to a contract for the sale of a motor yacht, and that the contract was breached by First United. Renda contends that the district court erred in holding him individually liable since the court had previously granted a directed verdict in favor of Renda on the College's claim that Renda, the president and principal shareholder of First United, was individually liable on a check he signed on behalf of First United.

Both Renda and First United contend that there was insufficient evidence for the jury to find that they were liable to the College for civil theft and fraud, and that the district court erred in instructing the jury as to the standard of proof on the civil theft claim. Renda and First United also contend that the district court erred in granting the College both trebled and punitive damages, since this amounted to a double recovery for the College, and an excessive penalty against Renda and First United. Finally, Renda and First United contend that there was insufficient evidence for the jury to conclude that the College was entitled to punitive damages.

On its cross-appeal, the College contends that the district court erred in re-entering its orders denying Renda and First United's motions for a new trial and for judgment notwithstanding the verdict, thereby allowing Renda and First United to appeal.

The questions presented on this appeal are:

(1) whether the district court erred in determining that there was sufficient evidence for the jury to find that the College and First United had entered into a contract for the sale of a vessel, and that First United had breached that contract;

(2) whether the district court erred in determining that Renda was individually liable to the College when the court had previously entered a directed verdict for Renda on the second count of the complaint, concluding that Renda was not individually liable under Fla.Stat. § 673.3–403 on the check he signed on behalf of First United;

(3) whether the district court erred in its jury instruction as to the standard of proof required to find liability for civil theft;

(4) whether the district court erred in determining that there was sufficient evidence for the jury to find that Renda and First United had defrauded the College; and

(5) whether the district court erred in its award of punitive damages.

The question presented by the College's cross-appeal pertains to the timeliness of the appeal. Specifically, the question presented is whether the district court erred in re-entering its order which denied the motions of Renda and First United for a new trial and for judgment notwithstanding the verdict, when Renda and First United had not received notice of the original order.

It is the holding of the court that the College's cross-appeal is dismissed. On the appeal by Renda and First United, we conclude that the district court did not err in awarding judgment against First United for compensatory damages on the breach of contract claim, and against Renda and First United for punitive damages on the fraud claim. Consequently, we affirm the district court's award of compensatory and punitive damages. Since we conclude, however, that the district court erred in its jury instructions on the civil theft claim, we reverse as to the district court's award of trebled damages based on civil theft.

## BACKGROUND

The testimony at trial revealed that, in 1983, Mario Renda contacted the Council for College Resources inquiring as to the availability of a motor yacht. The Council for College Resources was a corporation owned by Sidney Green and Andrew Janis whose purpose was to secure donations to Palm Beach Atlantic College. Pursuant to Renda's inquiry, Green located a 108 foot yacht known as the "JUDI KAYE". The yacht was owned by Jerry Lipps, and its appraised value was $950,000. Thereafter, Palm Beach Atlantic College and Lipps entered into an agreement that required the

College to pay Lipps $450,000 for the yacht, allowing Lipps to receive a tax deduction of $500,000. This deduction would result from the difference between the $950,000 appraised value of the yacht, and the cash payment of $450,000.

On December 1, 1983, after negotiations with the College, Renda sent Green a letter that contained the terms of an agreement whereby Renda would buy the JUDI KAYE after the College acquired it from Lipps. Enclosed with the letter was a check for $50,000, constituting a "refundable deposit" on the JUDI KAYE. The check was payable to the College and was drawn on the corporate account of First United Fund, Ltd., a New York corporation whose president and principal shareholder was Renda. The letter also made reference to Stanmar Corp., a Delaware corporation of which Renda was also the president and principal shareholder. Specifically, the letter stated that:

> The total sales price is $650,000. A $400,000 payment will be made by Stanmar Corp.; and a $250,000 contribution to Palm Beach Atlantic College will be made by First United Fund; $50,000 of which is herewith enclosed.

Approximately ten days after receiving the check and letter, Green notified Renda by telephone that the College could not deem any payment made on the purchase of the JUDI KAYE as a charitable donation. Nevertheless, Renda decided to proceed with the transaction, and the closing on the JUDI KAYE was set for December 19, 1983, at the College.

Present at the closing were Lipps, the owner of the JUDI KAYE, Renda, Renda's attorney Stuart Steinberg, Green and Janis on behalf of the Council for College Resources, and Colonel Walter Trauger on behalf of the College. The College first obtained title to the yacht from Lipps. Renda then paid the $650,000 sales price as follows: he received credit for the $50,000 deposit, wired $400,000 cash from Stanmar, and for the balance of $200,000, wrote a check on the corporate account of First United. Thereupon, the College executed the bill of sale, transferring the yacht to

Stanmar. The bill of sale stated the consideration as "[t]en dollars ... & other good and valuable considerations," and was signed by Colonel Walter Trauger, who had authority to sign on behalf of the College.

The testimony further revealed that Steinberg then asked for and received a second bill of sale, allegedly for "accounting purposes," showing $400,000 as the consideration. The second bill of sale was signed by Sidney Green, who testified that he had no authority to sign on behalf of the College. Subsequently, Steinberg asked for and received back the $200,000 check, and wrote the words "charitable donation check" on the front and "charitable donation Palm Beach Atlantic College" on the back of the check. Green and Janis objected to the addition of this writing on the check. Janis, Renda and Steinberg then went to see the Vice President for Finance and Administration for the College, who informed them that the College could not accept the check since such a charitable donation would be illegal.

At 8:30 A.M. the next morning, Janis, Renda and Steinberg met to discuss the $200,000 check. Janis testified that during this meeting, Renda stated that: "We will make that check good and give you another one." Notwithstanding his statement that he would issue a substitute check, at 9:05 A.M., a stop-payment order was issued on the $200,000 check at Renda's request.

Relying upon Renda's promise to "make that check good," the College waited for a substitute check. After approximately one week, Janis telephoned Steinberg to ask about the check. Janis testified that Steinberg refused to issue a new check. Janis stated that Steinberg told him: "[W]e have got a legitimate bill of sale for $400,000. There is no reason for us to give you the $200,000." On January 23, 1984, the College unsuccessfully attempted to negotiate payment on the check.

On June 11, 1985, the College filed suit in the state courts of Florida against Renda, First United, and Stanmar. Asserting diversity jurisdiction, Renda, First United, and Stanmar removed the case to the Unit-

ed States District Court for the Southern District of Florida.

The jury returned a verdict against First United for breach of contract, civil theft, and fraud, and against Renda for civil theft and fraud. The jury determined that Stanmar was not liable. The jury granted the College $200,000 in compensatory damages on its breach of contract claim against First United. The jury also held both Renda and First United liable for punitive damages based on fraud. The jury granted the College $300,000 in punitive damages against Renda, and $150,000 in punitive damages against First United. In its judgment order, entered on October 26, 1987, the court, on the basis of the jury's finding of civil theft, trebled the compensatory damages.

## DISCUSSION

In this diversity action, the court must apply the substantive law of the forum state, Florida. *See Reisman v. General Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988).

### I. *The College's Cross–Appeal*

■ On November 2, 1987, Renda and First United filed motions for judgment notwithstanding the verdict, or alternatively, a new trial, and a motion to alter or amend the judgment. The motions for judgment notwithstanding the verdict and a new trial were denied by an order dated August 12, 1988.

The record reveals that counsel for Renda and First United did not receive notice of the court's August 12, 1988 order until October 24, 1988, by which date the time for notice of appeal, under Fed.R.App.P. 4(a)(1), had expired. Subsequently, pursuant to a motion of Renda and First United, the court re-entered its order on April 7, 1989. The April 7, 1989 order also denied Renda and First United's motion to alter or amend the judgment, which had not been decided by the August 12, 1988 order.

It is not disputed that the April 7, 1989 order was the court's initial decision on the motion to alter or amend the judgment, brought under Federal Rule of Civil Procedure 59. Federal Rule of Appellate Procedure 4(a)(4) provides that the period within which a party must issue a notice of appeal is tolled by a Rule 59 motion to alter or amend the judgment. *See also* 6A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 59.12[2] (2d ed. 1989). Hence, under Fed.R.App.P. 4(a)(4), Renda and First United had 30 days from April 7, 1989, to file their notice of appeal. Since Renda and First United filed their notice of appeal on April 28, 1989, their notice of appeal was timely.

The College contends that the appeal was untimely filed because "by entering its order denying the motions for new trial and for judgment notwithstanding the verdict on August 12, 1988, the court effectively disposed of all Rule 59 motions pending before the court." The College asserts that the Rule 59 motion "in fact was a repeat of the Motion for New Trial and Judgment Notwithstanding the Verdict...."

We reject the College's contention. The August 12, 1988 order expressly stated that "the defendants' Motion for Judgment Notwithstanding the Verdict or New Trial is hereby DENIED." The order made no mention of the Rule 59 motion, and, hence, the court clearly made no decision on the Rule 59 motion. Accordingly, the College's cross-appeal is dismissed.

### II. *Renda and First United's Appeal*

#### A. *Breach of Contract Against First United*

■ First United contends that the evidence presented at trial was insufficient for the jury to find that there was a contract to which the College was a party and that "even assuming ... the existence of a contract to which [First United] was a party, [t]here is no evidence from which a jury could properly find that said contract was breached by First United...."

We note at the outset that "[w]hen reviewing the sufficiency of the evidence supporting a general jury verdict, we are not free to substitute our judgment for that of the jury." *Marshall Durbin Food Corp.*

*v. Equitable Life Assurance Soc'y of the United States*, 834 F.2d 949, 952 (11th Cir. 1987), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988). Indeed, "our inquiry is limited to determining 'whether or not reasonable jurors could have concluded as this jury did based upon the evidence presented.' " *Id.* (quoting *Griffin v. Swim–Tech Corp.*, 722 F.2d 677, 679 n. 1 (11th Cir.1984)). It is understood that "[w]hile making this determination, we are obliged to examine all the evidence and draw reasonable inferences in favor of the party prevailing in the district court." *Id.*

In the present case, the evidence at trial was sufficient to support the jury's finding that there was a contract between First United and the College, and that First United breached that contract. The evidence at trial included the $50,000 check drawn on a corporate account of First United, and made payable to the College. Accompanying the check was the letter, signed by Renda as "President," and addressed to Green at the College. The letter stated that the $50,000 check is "a refundable deposit on the purchase of the JUDI KAY[E]" and that "[t]he total sales price is $650,000." Additional evidence showed that the $600,000 balance was paid to the College with a $200,000 check drawn on a First United account and a $400,000 check drawn on a Stanmar account. The evidence also indicates that payment was stopped on the $200,000 check at Renda's request.

Upon a review of all of the evidence and drawing reasonable inferences in favor of the College, we conclude that there was sufficient evidence for the jury to find that an offer was made by First United, that certain and definite terms were accepted by the College, and that the parties entered into a contract. We also conclude that there was sufficient evidence for the jury to find that First United failed to perform a promise under the contract, and therefore breached the contract.

Hence, since there was sufficient evidence for the jury to conclude that First United entered into a contract with the College, and that First United breached

that contract, the judgment against First United for $200,000 in compensatory damages on the breach of contract claim is affirmed.

### B. *Individual Liability Against Renda*

█ Renda contends that he cannot be held individually liable in this case since "by directing a verdict in favor of ... Renda with respect to count II of the complaint, ... the court determined, as a matter of law, that [the College] failed to present any evidence upon which the jury properly could rely to justify piercing the corporate veils...."

The second count of the complaint alleged that Renda was personally liable under section 673.3–403 of the Florida Statutes. Section 673.3–403, which is part of the Uniform Commercial Code, provides that "[a]n authorized representative who signs his own name to an instrument[,] ... [e]xcept as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity...." Fla.Stat. § 673.3–403(2)(b) (1966). In directing a verdict against the College on this count, the court correctly noted that section 673.3–403 does not apply when, as in this case, the circumstances and dealings between the parties indicate that the authorized representative is signing in a representative capacity.

In ordering the directed verdict, the court did not decide Renda's liability for civil theft or fraud. Accordingly, the directed verdict on the second count does not prevent the court from imposing individual liability on Renda on the basis of fraud.

### C. *Civil Theft Against Renda and First United*

█ In its verdict, the jury found that both Renda and First United had committed civil theft. However, the jury did not grant any compensatory damages for the civil theft, and, indeed, was not asked to grant compensatory damages for civil theft. In its final judgment order, on the basis of the jury's finding of civil theft, the

court trebled the $200,000 in compensatory damages awarded against First United for breach of contract.

Renda and First United contend that, based on the jury's finding of civil theft, the district court erred in trebling the compensatory damages awarded to the College, since the instructions to the jury "erroneously told the jury that [the College] need prove civil theft by only the greater weight of the evidence." Renda and First United assert that, under Florida law applicable at the time of trial, a plaintiff must prove civil theft by "clear and convincing evidence."

Under section 812.014 of the Florida Statutes:

(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:

(a) Deprive the other person of a right to the property or a benefit therefrom.

(b) Appropriate the property to his own use or to the use of any person not entitled thereto.

Fla.Stat. § 812.014 (Supp.1990).

On June 11, 1985, when this action was commenced by the filing of the complaint, a cause of action for civil theft was granted by section 812.035(7) of the Florida Statutes. Section 812.035(7) granted a cause of action, for both individuals and the state, "for three-fold the actual damages sustained." Pursuant to case law, in such cases the burden of proof required a plaintiff to prove civil theft by a "preponderance" or the "greater weight" of the evidence. *See, e.g., Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So.2d 1157, 1163 (Fla.Dist.Ct.App.1984).

Subsequently, section 812.035(7) was amended. The amended section 812.035(7), which became effective on October 1, 1986, provided a remedy only for the state, and not for individuals. The amended section 812.035(7) also established a "clear and convincing evidence" burden of proof for the state. The amended section 812.035(7) still provided for an award of "three-fold the actual damages sustained."

The Florida legislature also enacted section 772.104 of the Florida Statutes, which provided individuals with civil remedies for criminal practices. Section 772.104, which became effective on October 1, 1986, expressly established a "clear and convincing evidence" burden of proof. *See* Fla.Stat. § 772.104 (Supp.1990). Section 772.104 also provided for an award of "threefold the actual damages sustained."

Renda and First United contend that section 772.104 is applicable in this case since, although the action was commenced before October 1, 1986, the trial began after that date, on October 15, 1987.

In *Stein v. Miller Industries, Inc.*, 564 So.2d 539, 540 (Fla.Dist.Ct.App.1990), the defendant appealed from an award of damages based on civil theft, and claimed that the trial court erred in refusing his requested jury instruction for a "clear and convincing evidence" burden of proof. *See* 564 So.2d at 539. In *Stein*, the action had been commenced prior to October 1, 1986, but the trial began after that date, on January 30, 1989. The appellate court reversed on the civil theft claim, and noted that "the standard of proof prescribed in section 772.104 and sought by Stein's requested instruction was retrospectively applicable and the correct standard with which the jury should have been charged." *Id.* at 540. *See also Cutler v. Pelletier*, 507 So.2d 676, 679 (Fla.Dist.Ct.App.) (amended section 812.035(7) is retrospectively applicable), *review denied*, 518 So.2d 1277 (Fla.1987).

It must be noted that we have previously stated, in a footnote in a 1987 case, that the amended section 812.035(7) does not apply to an action commenced before October 1, 1986. *See Rosenthal Toyota, Inc. v. Thorpe*, 824 F.2d 897, 902 n. 3 (11th Cir. 1987). However, since subsequent Florida law on the specific question of the burden of proof provides that section 772.104 is retrospectively applicable, we conclude that the district court should have instructed the jury that the College had the burden of proving civil theft by "clear and convincing evidence." Hence, we hold that the district court erred in its instructions to the jury,

and therefore committed reversible error in trebling the compensatory damages awarded to the College on the basis of the jury's finding of civil theft. Accordingly, the district court's judgment on the basis of civil theft, trebling the compensatory damages awarded to the College, is reversed.

■ Generally, when an appellate court reverses a trial court's award of damages on the ground that the jury was improperly instructed on the appropriate burden of proof, the case is remanded to the trial court for a new trial. In this case, however, a remand is unnecessary.

As indicated by *McArthur Dairy, Inc. v. Original Kielbs, Inc.*, 481 So.2d 535 (Fla. Dist.Ct.App.1986), Florida law does not permit an award of both trebled and punitive damages under section 812.035(7). In *McArthur Dairy*, the plaintiff brought an action for damages against a corporation and one of the corporation's employees, for acts committed by the employee. *See id.* at 536. The plaintiff's complaint stated causes of action for conversion against both the corporation and its employee, and for negligent supervision against the corporation. The complaint also stated causes of action for civil theft, under section 812.-035(7) of the Florida statutes, against both defendants. The trial court held for the plaintiff, and awarded compensatory damages against both defendants, and punitive damages against the defendant employee. The trial court also granted plaintiff's post-trial motion trebling the amount of compensatory damages awarded against both defendants. *See id.* at 538.

The defendants appealed the trial court's order trebling the compensatory damages. The appellate court noted that section 812.-035(7), which granted the plaintiff's cause of action for civil theft, permitted an award of trebled damages but did not expressly permit an award of punitive damages. *See id.* at 539. The court noted that "an earlier version of Section 812.035(7), Florida Statutes (1983), provided that punitive damages were also recoverable, in addition to treble damages, by the victim of a theft or conversion...." *Id.* Quoting from a bill analysis prepared by the staff of the Committee on Criminal Justice of the Florida House of Representatives pertaining to the amendment of section 812.035(7), the court noted that "'[t]he appellate courts have generally frowned upon awards for treble damages, plus punitive damages, upon the ground that treble damages are punitive in nature already and the combination of the two are necessarily duplicative as a punitive element, resulting in an excessive penalty.'" *Id.* The court concluded that, under the amended section 812.035(7), punitive damages "are no longer permitted because they are plainly duplicative of the treble damages remedy." *Id.* at 540. Similarly, in *Cutler*, the Florida appellate court noted that under section 812.035(7), "the award of both treble and punitive damages amounts to a double recovery for the appellees, and an excessive penalty to the appellant." 507 So.2d at 679–80. *See also Warren v. Monahan Beaches Jewelry Ctr., Inc.*, 548 So.2d 870, 873–74 (Fla.Dist.Ct.App.1989).

In its brief, the College "concedes that punitive damages cannot be recovered under the civil theft statute where the same act constitutes civil theft and also fraud." The College, however, contends that "[i]t is proper ... to award punitive damages where a defendant is found liable for civil theft and fraud where civil theft and fraud are separate acts."

In this case, the jury specifically awarded punitive damages for fraud. Nevertheless, the acts complained of in the fraud and civil theft counts were the same. In both counts, the College sought damages for Renda and First United's effort to purchase the JUDI KAYE at less than the agreed upon value. As noted by the Florida appellate court, "an award of both treble damages and punitive damages for the same act amounts to a double recovery or an excessive penalty." *Bill Terry's Inc. v. Atlantic Motor Sales, Inc.*, 409 So.2d 507, 509 (Fla.Dist.Ct.App.1982). Hence, the College may not receive both punitive and trebled compensatory damages.

We note that the College received $200,-000 in compensatory damages from First United, and $450,000 in punitive damages

from Renda and First United, totalling $650,000 in damages. If the College were to prevail on its civil theft claim on a remand, it would only be entitled to a trebling of its compensatory damages and no punitive damages, and hence would receive a total of $600,000. Hence, since the College could not receive a greater recovery even if it prevailed on a retrial on the civil theft claim, a remand is unnecessary.

### D. *Fraud Against Renda and First United*

■ Renda and First United contend that there was insufficient evidence for the jury to conclude that they had defrauded the College.

Under Florida law, the elements for actionable fraud are:

(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party.

*Lance v. Wade,* 457 So.2d 1008, 1011 (Fla. 1984).

In this case, it is clear that there was sufficient evidence for the jury to find that Renda and First United had defrauded the College. There was evidence that Renda, acting in his capacity as president of First United, misrepresented that he would purchase the yacht for $650,000, intending that the College would rely on this misrepresentation. There is also sufficient evidence for the jury to find that the College relied on Renda's misrepresentation.

Hence, since there was sufficient evidence for the jury to find that Renda and First United had defrauded the College, the judgment against Renda and First United on the fraud claim is affirmed.

### E. *Damages*

■ Renda and First United contend that the district court erred in awarding punitive damages of $300,000 against Renda and $150,000 against First United.

We have noted that, under Florida law, an award of punitive damages is proper when a defendant's conduct "is characterized by 'willfulness, wantonness, maliciousness, gross negligence or recklessness, oppression, outrageous conduct, deliberate violence, moral turpitude, insult, or fraud.'" *Cook v. Deltona Corp.,* 753 F.2d 1552, 1563 (11th Cir.1985) (quoting 17 Fla.Jur.2d *Damages* § 119 (1980)). *See also Griffith v. Shamrock Village, Inc.,* 94 So.2d 854, 858 (Fla.1957). Furthermore, "[w]hether a fraudulent act is sufficiently outrageous so as to justify an award of punitive damages is a question for the jury." *Schief v. Live Supply, Inc.,* 431 So.2d 602, 603 (Fla.Dist. Ct.App.), *review denied,* 440 So.2d 352 (Fla. 1983). *See also Dunn v. Shaw,* 303 So.2d 6, 7 (Fla.1974).

Based on our review of the evidence in this case, we have no doubt that the conduct of Renda and First United was such that the jury could properly have awarded punitive damages. In a supplementary letter to the court, however, Renda and First United contend that, as a matter of law, they cannot be held liable for punitive damages. Relying on *National Aircraft Services, Inc. v. Aeroserv International, Inc.,* 544 So.2d 1063 (Fla.Dist.Ct.App.1989), Renda and First United assert that since the jury did not award the College any compensatory damages for fraud, they cannot be held liable for punitive damages on the basis of fraud.

In *National Aircraft,* a Florida appellate court reversed an award of nominal and punitive damages which had been based on a finding of fraud. *See* 544 So.2d at 1064. In reversing, the court listed five separate grounds. The fifth ground, which Renda and First United contend supports their claim that the College is not entitled to punitive damages, is that "punitive damages for fraud may not be based upon nominal damages alone." *National Aircraft,* 544 So.2d at 1065. This, however, is not a case which involves only nominal damages. Here the jury found compensatory damages of $200,000 based on breach of contract.

In addition, the breach of contract claim arose from the same acts as the fraud claim, and thus the jury's award of punitive damages was not solely based on nominal damages. Furthermore, the district court's award of punitive damages is supported by the decision of the Florida Supreme Court in *Ault v. Lohr*, 538 So.2d 454, 457 (Fla. 1989), on a question of law certified by this court.

In *Lohr v. Florida Dep't of Corrections*, 835 F.2d 1402 (11th Cir.1988), the plaintiffs, two inmates at a Florida prison, brought suit for personal injuries suffered as a result of an assault by a Florida prison guard. The jury found in favor of the plaintiff Lohr, but granted him no compensatory damages. The jury, however, granted Lohr $5,000 in punitive damages. *See id.* at 1403.

On appeal, we stated that "[t]raditionally, Florida has required that punitive damages be supported by some award of compensatory damages." *Id.* We also noted, however, that in a case decided in 1976 the Florida Supreme Court stated that " 'the establishment of liability for a breach of duty will support an otherwise valid punitive damages award even in the absence of financial loss for which compensatory damages would be appropriate.' " *Id.* (quoting *Lassitter v. International Union of Operating Eng'rs*, 349 So.2d 622, 626 (Fla. 1976)). We then certified the following question to the Florida Supreme Court:

> In Florida, must a compensatory damages award underlie a punitive damages award in a case in which the jury has made express findings against a defendant?

*Id.*

In *Ault v. Lohr*, 538 So.2d 454 (Fla.1989), the Florida Supreme Court answered the certified question in the negative, concluding that compensatory damages need not underlie an award of punitive damages where the jury has made express findings against a defendant. The court reasoned that "an express finding of a breach of duty should be the critical factor in an award of punitive damages." *Id.* at 456. Hence, the court held that a finding of

liability alone will support an award of punitive damages " 'even in the absence of financial loss for which compensatory damages would be appropriate.' " *Id.* (quoting *Lassitter*, 349 So.2d at 626).

In this case, as in *Ault*, the jury made an express finding that Renda and First United had defrauded the College. Hence, we conclude that the award of punitive damages against both Renda and First United is supported by the Florida law of punitive damages.

██ In their supplementary letter to the court, Renda and First United also assert that the College is not entitled to punitive damages since, in a May 20, 1986 order, the court struck the College's claims for punitive damages in its complaint, and that consequently "[t]here was no basis to award any amount as punitive damages."

The claims for punitive damages that were struck by the May 20, 1986 order, however, were based on statutory causes of action. In an October 16, 1987 conference on the proposed jury instructions, the court expressly stated that it would permit the jury to be charged on punitive damages based on common law fraud counts. Hence, the May 20, 1986 order does not prevent the court from permitting the jury to award punitive damages against Renda and First United.

Accordingly, we affirm the district court's award of punitive damages in favor of the College, against both Renda and First United.

## CONCLUSION

It is the holding of the court that the College's cross-appeal is dismissed. On the appeal by Renda and First United, we conclude that the district court did not err in awarding judgment against First United for compensatory damages on the breach of contract claim, and against Renda and First United for punitive damages on the fraud claim. Consequently, we affirm the district court's award of compensatory and punitive damages. Since we find, however, that the district court erred in its jury instructions on the civil theft claim, we

reverse the district court's award of trebled damages based on civil theft.

Accordingly the district court's judgment is AFFIRMED in part and REVERSED in part.