591 So.2d 1038 (1991)
Robert A. RIEDEL, Appellant,
v.
NCNB NATIONAL BANK OF FLORIDA, INC., a National banking association, Appellee.
No. 90-2514.
District Court of Appeal of Florida, First District.
December 26, 1991.
Rehearing Denied February 3, 1992.
Daniel S. Dearing, Tallahassee, for appellant.
Thomas J. Jones, Timothy G. Schoenwalder and Susan L. Turner, Holland & Knight, Tallahassee, for appellee.
SMITH, Judge.
Appellant seeks reversal of an order dismissing his amended complaint. Finding no reversible error, we affirm.
*1039 Appellant filed a six count complaint against NCNB National Bank of Florida (NCNB) alleging that he owns 100 percent interest in Nantahala Village, Inc. (NVI), a North Carolina corporation which in turn was the owner and operator of the Nantahala Village resort. Appellant alleged, among other things, that NCNB engaged in tortious conduct when it applied the collateral of a loan made to appellant personally to offset a mortgage indebtedness of NVI. The NVI mortgage was personally guaranteed by appellant and his wife, and this "Continuing and Unconditional Guaranty," as well as the NVI mortgage and the note on the personal loan to appellant, were among the several exhibits attached to the amended complaint. Appellant separately stated his causes of action as follows: breach of duty of good faith and fair dealing, "breach of statute tort", conversion, economic duress, unfair and deceptive trade practices under North Carolina law and fraudulent inducement.
The amended complaint alleges a refusal by NCNB in March 1989 to grant an "advance" on appellant's line of credit to pay interest on the mortgage and to meet other NVI capital requirements. It is further alleged that as a consequence of NCNB's refusal, appellant was compelled to contract to sell Nantahala. After the prospective buyer reneged on the purchase, it is alleged that NVI needed to rearrange its debt to NCNB. Appellant also alleged that NCNB sold a portion of the stock pledged as collateral to satisfy the line of credit, but once that debt was satisfied, NCNB failed to release the remaining collateral to appellant. Appellant alleged that NCNB represented that it would release the unsold stock to him. Appellant alleged in the alternative that NCNB failed to disclose its intent to retain the unsold stock under circumstances where it had an affirmative duty to make such a disclosure. Appellant made further allegations regarding negotiations concerning the restructuring the NVI mortgage. The negotiations apparently ended when appellant refused to accept NCNB's mortgage extension agreements, resulting in foreclosure. In an action in the federal district court, in North Carolina, appellant attempted to prevent foreeclosure, but that attempt was unsuccessful and a sale pursuant to foreclosure was completed.
NCNB filed a motion to dismiss, arguing that the exhibits to the amended complaint refuted the allegations regarding NCNB's supposed lack of good faith and the charge of conversion. NCNB also argued that appellant failed to allege facts which would support a cause of action for conversion, for fraudulent inducement, or for unfair and deceptive trade practices. NCNB argued further that "economic duress" is not a cause of action recognized in Florida law, and that with respect to the remaining counts, appellant generally failed to state a cause of action. After receiving argument from the parties, the trial court dismissed the amended complaint based on the grounds stated in NCNB's motion to dismiss.[1]
Appellant argues that Count I, which alleged a breach of the duty of good faith and fair dealing, did state a cause of action because NCNB wrongfully retained collateral pledged on appellant's personal line-of-credit. It is true that the collateral at issue, nine thousand shares of stock, was pledged as security for a $175,000.00 revolving line of credit made to appellant personally to use against operating and other capital expenses of NVI. However, the personal loan note executed in connection with this agreement provides that the pledged collateral would be used to secure the $175,000.00 loan
and all other indebtedness of Obligor [appellant] to Holder [NCNB], however and whenever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, sole, joint or several, due or to become due, or which may be hereafter contracted or acquired....
*1040 This language, which NCNB styles a "cross-collateralization clause," also appears in the NVI mortgage and the Continuing and Unconditional Guaranty executed by appellant and his wife on August 30, 1988. Appellant has failed to suggest how NCNB violated any laws or breached any duty owed appellant by acting in accordance with this "cross-collateralization clause."
In his argument on appeal, appellant relies heavily upon his contention that the NVI mortgage was not in default when NCNB refused appellant's demand, made sometime after March 1989, to return the stock to him.[2] Appellant has charged that NCNB's refusal to release the collateral constituted bad faith. We find this contention unavailing, as did the court below, for NCNB's action in retaining the stock was permissible under the language outlined above. That is, NCNB had the contractual authority to hold the stock against a debt due or "to become due."
Nor are we persuaded that the retention of collateral was improper by virtue of the fact that the obligor on the mortgage was NVI, while the obligor on the $175,000.00 line of credit was appellant personally. As noted, the "cross-collateralization clause" made the stock security for any indebtedness of the appellant, whether primary or secondary, direct or indirect, absolute or contingent, sole, joint or several. Further, the Continuing and Unconditional Guaranty provided that appellant was the "surety" for any and all "liabilities", which is defined in the agreement as any "primary, secondary, direct, indirect, absolute, contingent, sole, joint or several" obligations incurred to date or in the future. A surety is a party to an original obligation, and may be sued as a promisor. Collins v. National Fire Insurance Co., 105 So.2d 190 (Fla. 2d DCA 1958). Appellant has not identified any ambiguity in the instruments described above, and the exhibits attached to the amended complaint refute the allegation of a breach of NCNB's common law duty of good faith, and the allegation that NCNB engaged in unfair trade practices, Count V. Further, these exhibits refute the allegation of conversion made in Count III. Accordingly, we hold the dismissal of these counts was not erroneous. See, Greenwald v. Triple D Properties, Inc., 424 So.2d 185 (Fla. 4th DCA 1983); Schweitzer v. Seaman, 383 So.2d 1175 (Fla. 4th DCA 1980) (where there is an inconsistency between the general allegations of material fact in a complaint and the specific facts revealed by the exhibit, and they have the effect of neutralizing each other, the pleading is rendered objectionable).
We hold that appellant has failed to allege facts sufficient to support a cause of action for "economic duress," which is not recognized as an independent cause of action in Florida. Economic duress has been recognized as an affirmative defense. See, Associated Housing Corp. v. Keller Building Products of Jacksonville, Inc., 335 So.2d 362 (Fla. 1st DCA 1976); accord, Deleo v. Spero, 560 So.2d 426 (Fla. 4th DCA 1990). As for the Count II, styled "breach of statute tort," the amended complaint does not state allegations demonstrating a breach of the UCC duty of good faith. The UCC duty of good faith may not be imposed to override the express terms of a contract. Flagship National Bank v. Gray Distribution Systems, Inc., 485 So.2d 1336 (Fla. 3d DCA 1986), rev. denied, 497 So.2d 1217 (Fla. 1986). Furthermore, appellant has not alleged a cognizable cause of action for violation of 12 U.S.C. § 83. See Pan American Bank of Tampa v. Sullivan, 375 So.2d 338 (Fla. 4th DCA 1979) (the alleged illegality of a loan under 12 U.S.C. § 83 should not be asserted as a defense to collection of a note which is *1041 otherwise regular on its face); Federal Deposit Insurance Corp. v. Meo, 505 F.2d 790 (9th Cir.1974) (only a governmental agency has standing to challenge a bank loan made in violation of 12 U.S.C. § 83).
As for Count IV, fraudulent inducement, appellant alleged that NCNB induced him to abandon the existing NVI 15-year mortgage in favor of a one-year mortgage. However, correspondence attached to the complaint indicate that it was the appellant who wanted to restructure the existing mortgage so that only payments on interest would be made for one year. Appellant sought such a restructuring in order to cope with unexpected cash flow shortages.
Appellant also alleges with respect to Count IV that he was induced to place stock as collateral against the line-of-credit on the assurance by NCNB that it would release the stock to him when the line-of-credit was paid off. Again, the collateral note executed by appellant for the line-of-credit authorized NCNB to retain the stock as security for other indebtedness. Since the language of the collateral note is unambiguous, the intent of the parties must be determined from it rather than from other circumstances. Gendzier v. Bielecki, 97 So.2d 604 (Fla. 1957).
In sum, we find appellant's arguments on appeal to be without merit, and the dismissal of the complaint is AFFIRMED.
BARFIELD and MINER, JJ., concur.
NOTES
[1] The order under appeal did not simply grant the motion to dismiss. While the complaint was not dismissed with prejudice, the order under review did specifically dismiss the amended complaint; therefore, the order is appealable. Salasky v. Humana Hospital Kissimmee Auxiliary, Inc., 478 So.2d 428 (Fla. 5th DCA 1985).
[2] According to the terms of the NVI mortgage, the principal was to be paid on demand or August 1, 1989. Appellant alleged in his amended complaint that on October 31, 1989, NCNB demanded payment of the mortgage in full by November 7, 1989. Thereafter, it is alleged, NCNB sold appellant's stock and foreclosed.

Because the amended complaint and the attached documents indicate that demand was not made until after the principal was due, there is no support for the argument made on appeal by appellant that NCNB breached its duty of good faith by seeking foreclosure when it did.