732 So.2d 1092 (1999)
John H. COX and Edward Bartolozzi, Appellants,
v.
CSX INTERMODAL, INC. and Helen Venson, Appellees.
No. 96-4514.
District Court of Appeal of Florida, First District.
January 13, 1999.
Rehearing Denied April 19, 1999.
*1093 Sharon Lee Stedman, Orlando, for Appellants.
*1094 Scott S. Cairns of McGuire, Woods, Battle & Boothe, Jacksonville; Kent A. Gardiner, Alexandre de Gramont and David M. Pfefferkorn of Crowell & Moring, Washington, D.C., for Appellees.
VAN NORTWICK, Judge.
John H. Cox and Edward Bartolozzi, truck owners and operators who entered into contracts with appellee CSX Intermodal, Inc. (CSXI) to haul freight to and from the CSXI terminal in Orlando, appeal a summary final judgment entered in favor of appellees, CSXI and Helen Venson, a CSXI employee, in the appellants' action for breach of contract against CSXI and tortious interference against Ms. Venson. For the reasons that follow, we affirm the summary judgment as to appellee Venson and affirm in part as to appellee CSXI. We reverse in part as to CSXI, however, because we find issues of fact concerning whether CSXI breached the implied covenant of good faith and fair dealing applicable to the parties' contractual relationship.

Factual and Procedural Background
Appellants entered into separate, but identical, pre-printed form contracts with CSXI in which they agreed to haul freight to and from the CSXI terminal in Orlando, Florida. Under the terms of these agreements, CSXI gained exclusive rights to appellants' transport services. The contract terms required appellants to operate solely at the direction of CSXI, and permitted appellants to transport only CSXI freight, or freight specified by CSXI. In addition, paragraph 4 of each contract between appellants and CSXI provides that:
4. CSXI shall make commodities available from time to time for transport by CONTRACTOR, but this Agreement shall in no way be construed as an agreement by CSXI to furnish, nor by CONTRACTOR to accept, any specific amount of freight or number of loads for transport by CONTRACTOR at any particular time or to any particular place.
In November 1995, appellants filed suit against CSXI for breach of contract and against Helen Venson, individually, for tortious interference with a business relationship. The breach of contract counts alleged that CSXI breached its contract with appellants by allowing its employee, Ms. Venson, to assign loads with the deliberate intent to withhold lucrative, better paying loads from appellants, and to assign only low-paying loads to them; and by failing to insure that loads were fairly distributed among all truck owners/operators. The tortious interference counts alleged that Ms. Venson systematically assigned more lucrative, better paying loads to specific owners/operators, and that her disparate assignment of loads interfered with appellants' relationship with CSXI, damaged appellants by reducing their income, and denied appellants the benefit of their bargain.
Thereafter, CSXI and Ms. Venson filed a joint motion for summary judgment on both the breach of contract claims and the tortious interference claims. With respect to the breach of contract claim, appellees argued that the parties had completed discovery and that, based on the undisputed facts, appellants could not make out a breach of contract claim against CSXI as a matter of law. Appellees asserted that the contract between CSXI and appellants gave CSXI "complete discretion as to whether and how it assigns freight loads to its independent contractors," and that, under the plain terms of the contract, CSXI had no obligation to assign any particular type or number of loads to any contractor.
With respect to the tortious interference claims, appellees asserted entitlement to summary judgment on the grounds that the contract was not breached, thus Ms. Venson could not as a matter of law have interfered with the contract. Appellees further argued that, as an employee of the contracting party, Ms. Venson must be considered a party to the contract and that she could not be sued for tortiously interfering *1095 with her own contract as a matter of law.
In their memorandum of law in support of summary judgment, appellees set forth various reasons why CSXI must have absolute discretion in assigning loads. Appellees maintained that CSXI must have discretion to assign particular loads to particular drivers (i) to ensure that a particular driver's equipment is appropriate to carry the type of load contemplated; (ii) to send a closer driver to a "pick-up" site when it would be unreasonable to send a different driver from a longer distance; or (iii) to gratify a customer's request that a specific driver carry that particular customer's load, or that a specific driver not carry the customer's load.
In opposition to the summary judgment motion, appellants contended that the contract had a latent ambiguity, in that the failure to specify the nature or method of assignment of loads made the contract susceptible to different constructions. Appellants further argued that, in addition to their own depositions, they presented competent evidence in the deposition transcripts of other witnesses which satisfied the requirement to demonstrate ambiguity by competent evidence and which demonstrated that the course of dealing between CSXI and the truckers with whom it contracted had created a "first come, first serve" dispatch policy, which had been breached by Ms. Venson's actions. Finally, appellants argued that, even if CSXI possessed substantial discretion to assign loads under the contract, they presented evidence that Ms. Venson, acting on behalf of CSXI, exercised that discretion in an arbitrary, fanciful and unreasonable manner.
The trial court entered summary final judgment in favor of both CSXI and Ms. Venson. The trial court concluded the contract "was clear and unambiguous on its face, and plainly bars Plaintiffs' breach of contract claims" against CSXI. The court further found that appellants had failed to provide evidence that Ms. Venson was acting outside the scope of her employment in dispatching loads to them. The court held because there was no genuine issue of fact that Ms. Venson was acting within the scope of her employment with CSXI, she could not be sued for tortiously interfering with a CSXI contract.

Standards of Review
Our review of the grant of summary final judgment in this case involves the interplay of several legal principles. As an initial matter, the standard governing the determination of a motion for summary judgment is well settled. "The purpose of a motion for summary judgment is to determine whether any genuine issues of material fact exist for resolution by the trier of fact." See CSX Transp., Inc. v. Pasco County, 660 So.2d 757, 758 (Fla. 2d DCA 1995). "A dispute over an issue of material fact is genuine if the evidence would permit a reasonable jury to return a verdict for the party against whom summary judgment is sought." See Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., ITT, 139 F.3d 1396 (11th Cir. 1998). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the heavy burden to prove a negative, that is, "the nonexistence of a genuine issue of a material fact." See Holl v. Talcott, 191 So.2d 40 (Fla.1966), cert. denied, 232 So.2d 181 (Fla.1969); Besco USA Int'l Corp. v. Home Savings of Am. FSB, 675 So.2d 687, 688 (Fla. 5th DCA 1996). If the record reflects even the possibility of a material issue of fact, or if different inferences can be drawn reasonably from the facts, that doubt must be resolved against the moving party and summary judgment must be denied. See Hervey v. Alfonso, 650 So.2d 644, 646 (Fla. 2d DCA 1995).
When a defendant moves for summary judgment, "[t]he function of the court is solely to determine whether the appropriate record presented in support of summary judgment conclusively shows that *1096 the plaintiff cannot prove the claim alleged as a matter of law." Id. A trial court is not authorized to try or weigh facts in ruling on a motion for summary judgment. See Jones v. Stoutenburgh, 91 So.2d 299 (Fla.1956). Summary judgment should be granted cautiously, with full recognition of the right of a litigant to a jury trial on the merits of his cause. See Vandyk v. South-side Gun, Inc., 638 So.2d 138, 140 (Fla. 1st DCA 1994); Gaymon v. Quinn Menhaden Fisheries of Texas, Inc., 108 So.2d 641, 644 (Fla. 1st DCA 1959).
Further, "[w]here the determination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is essentially one of law only and determinable by entry of summary judgment." See Angell v. Don Jones Ins. Agency, Inc., 620 So.2d 1012, 1014 (Fla. 2d DCA 1993). Accord Ball v. Florida Podiatrist Trust, 620 So.2d 1018, 1022 (Fla. 1st DCA 1993). In such case, "an appellate court is not restricted in its ability to reassess the meaning and effect of a written instrument to reach a conclusion contrary to that of the trial court." Angell, 620 So.2d at 1014.
Finally, when the language of a contract does not deal in express terms with all aspects of the rights and duties of the parties to the agreement, the language used "should be interpreted as reasonable persons, knowledgeable about the business or industry, would likely interpret them not some strained interpretation put forth by the drafter." Hussmann Corp. v. UPS Truck Leasing, Inc., 549 So.2d 215, 217 (Fla. 5th DCA 1989).

The Parties' Course of Dealings
The appellants argue that the trial court erred in granting summary judgment because disputed issues of fact exist as to whether the written contracts between CSXI and the appellants were modified by an unwritten CSXI policy governing the assignment of drivers. The appellants concede that the contracts grant CSXI discretion to designate and dispatch commodity loads to particular drivers. They contend, however, that the contracts are silent as to how loads were to be dispatched and that the facts show that CSXI had adopted an unwritten, "first-come, first-serve" policy to assign loads to drivers which had modified the written contract by the parties' course of dealings. It is CSXI's breach of this first-come, first-serve policy which the appellants contend constitutes a breach of the contracts.
Under certain circumstances, written contracts may be modified by a course of dealings, or by the parties' subsequent oral agreement. See Linear Corp. v. Standard Hardware Co., 423 So.2d 966, 968 (Fla. 1st DCA 1982); Barile Excavating & Pipeline Co., Inc. v. Vacuum Under Drain, Inc., 362 So.2d 117, 119 (Fla. 1st DCA 1978)(written contracts can be modified by subsequent oral agreement of the parties; subsequent modification also may result from conduct of the parties); see also Wilson v. Woodward, 602 So.2d 547, 549-550 (Fla. 2d DCA 1992); Flagship Nat'l Bank v. Gray Distribution Sys., Inc., 485 So.2d 1336, 1340 (Fla. 3d DCA), rev. denied, 497 So.2d 1217 (Fla.1986). When a course of dealing and the terms of the contract appear to conflict, the parties' practice and the written agreement must be construed as consistent with each other, if it is reasonable to do so. Id. If no reasonable consistent construction can be drawn, however, the express terms of the agreement control. Id.; Indian Harbor Citrus, Inc. v. Poppell, 658 So.2d 605, 606 (Fla. 4th DCA), rev. denied, 666 So.2d 144 (Fla.1995).[1]
*1097 Paragraph 4 of each of the contracts unambiguously and expressly disclaims any obligation on the part of CSXI to provide any specific quantity of freight or number of loads to appellants. If the "first come, first serve" load assignment policy allegedly adopted in the parties' course of dealings were made a part of these contracts, as sought by appellants, this modified term would directly conflict with the unambiguous terms of paragraph 4. Because the policy established by the course of dealings cannot be construed in a consistent manner with the express provisions of the contracts, it is the express provisions which must control. Id. Accordingly, we affirm the trial court's ruling that, as a matter of law, the express terms of the contracts preclude a modification of the contracts by the course of the dealings of the parties.

Implied Duty of Good Faith and Fair Dealing
The appellants also argue that, because the contracts at issue grant broad discretion to CSXI in the assignment of loads without specifying any criteria to be used in making these assignments, CSXI was obligated to make assignments in good faith and in a commercially reasonable manner. The appellants contend that summary judgment was inappropriate because disputed issues of fact exist with regard to whether the implied contractual duty of good faith was breached by CSXI employees making load assignments to appellants in a manner that was "arbitrary, fanciful and unreasonable" and that deprived appellants of the benefit of the bargain of their contracts. We agree.
It is axiomatic that "[e]very contract includes not only its written provisions, but also the terms and matters which, though not actually expressed, are implied by law, and these are as binding as the terms which are actually written or spoken." See First Nationwide Bank v. Florida Software Servs., Inc., 770 F.Supp. 1537, 1542 (M.D.Fla.1991), citing Sharp v. Williams, 141 Fla. 1, 192 So. 476, 480 (1939). One of the implied contract terms recognized both in Florida law and in New Jersey law is the implied covenant of good faith, fair dealing, and commercial reasonableness. See Scheck v. Burger King Corp., 798 F.Supp. 692, 700 (S.D.Fla.1992); First Nationwide Bank, 770 F.Supp. at 1542; The Green Companies, Inc. v. Kendall Racquetball Invs., Ltd., 560 So.2d 1208, 1210 (Fla. 3d DCA 1990); Fernandez v. Vazquez, 397 So.2d 1171, 1173-1174 (Fla. 3d DCA 1981); Sons of Thunder, Inc. v. Borden, 148 N.J. 396, 690 A.2d 575, 587-589 (N.J.1997); see also Robert S. Summers, The General Duty of Good Faith Its Recognition and Conceptualization, 67 Cornell L.Rev. 810 (1982); Restatement (Second) of Contracts § 205 (1979). This implied covenant arises because "[a] contract is an agreement whereby each party promises to perform their part of the bargain in good faith, and expects the other party to do the same." First Nationwide Bank, 770 F.Supp. at 1543. Thus, the implied covenant of good faith and fair dealing is designed to protect the contracting parties' reasonable expectations. See Scheck, 798 F.Supp. at 693, n. 5.
In considering the application of the implied duty of good faith to the instant action, we find persuasive the reasoning of Justice Souter who, while on the New Hampshire Supreme Court, explained the implied duty, as follows:
[U]nder an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.
Centronics v. Genicom Corp., 132 N.H. 133, 562 A.2d 187, 193 (N.H.1989). Thus, where the terms of the contract afford a party substantial discretion to *1098 promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party. See also Travellers Int'l v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir.1994)("Even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith").
Of course, the implied obligation of good faith cannot be used to vary the express terms of a contract. See City of Riviera Beach v. John's Towing, 691 So.2d 519, 521 (Fla. 4th DCA 1997); Riedel v. NCNB Nat'l Bank of Florida, 591 So.2d 1038, 1040 (Fla. 1st DCA 1991). In the instant case, however, the written contracts between CSXI and appellants are silent with regard to the methodology or standards to be used by CSXI in exercising its discretion to assign loads for transport.[2] The record reflects that an owner/operator of a vehicle who contracts with CSXI exclusively would be unable to meet the costs of operation if assigned to transport only low-paying, short-distance shipments and that CSXI repeatedly failed to assign long-haul, more lucrative loads to appellants. Thus, while the appellants have no right under the contracts to any particular method of assignment, issues of fact exist as to whether the manner by which CSXI exercised its discretion in assigning freight to appellants violated the implied duty of good faith, fair dealing and commercial reasonableness. Certainly, good faith business reasons might support the assignment of loads by CSXI to the appellants. On this limited record, however, because reasonable persons could differ as to whether CSXI's conduct in the performance of its contract with appellants violated the duty of good faith and fair dealing, the grant of summary final judgment was improper.

Tortious Interference
Appellants argue that it was error to grant summary judgment as to Ms. Venson, because disputed issues of fact exist concerning whether Ms. Venson tortiously interfered with appellants' contract by not regularly dispatching to them the longhaul, more lucrative loads. We agree with the trial court that, as a manager of trucking operations and dispatcher for CSXI, Ms. Venson must be considered a party to the CSXI contracts with the appellants for the purposes of our analysis and, under the undisputed facts here, as a matter of law, she cannot be sued for tortious interference with those contracts.
We have ruled that the elements of intentional interference with an advantageous business relationship are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) intentional and unjustified interference with the contract; *1099 (4) by a third party; and (5) damages caused by the interference. See Linafelt v. Bev, Inc., 662 So.2d 986, 989 (Fla. 1st DCA 1995); see also Sloan v. Sax, 505 So.2d 526, 527-28 (Fla. 3d DCA 1987)(citing Tamiami Trail Tours v. Cotton, 463 So.2d 1126 (Fla.1985)).
Generally, a tortious interference claim "exists only against persons who are not parties to the contractual relationship." West v. Troelstrup, 367 So.2d 253, 255 (Fla. 1st DCA 1979). Further, an employee or representative of a contracting party "must be considered as a party to the [contractual] relationship." Id. Given that corporate entities such as CSXI must act through individuals, a tortious interference claim will generally not lie against employees and representatives of contracting entities. Id.; see also Cedar Hills Properties Corp. v. Eastern Fed. Corp., 575 So.2d 673, 676 (Fla. 1st DCA), rev. denied, 589 So.2d 290 (Fla. 1991)("agent of corporate party ... cannot be considered to be a separate entity outside of the contractual relationship which can tortiously interfere with that relationship"); Muller v. Stromberg Carlson Corp., 427 So.2d 266, 270-71 (Fla. 2d DCA 1983)(corporate officer could not be sued for tortious interference with his corporation's contract);[3]see generally Annot., Liability of corporate director, officer, or employee for tortious interference with corporations contract with another, 72 A.L.R.4th 492 (1989). However, this so-called "privilege to interfere" enjoyed by a party who is an officer or employee of the contracting party or is integral to the contractual relationship is not absolute. Sloan, 505 So.2d at 528; see O.E. Smith's Sons, Inc. v. George, 545 So.2d 298, 299-300 (Fla. 1st DCA 1989). Thus, where an employee acts solely with ulterior purposes and without an honest belief that her actions would benefit her employer, individual liability for unlawful interference with the employer's contract with a third party may be imposed on the employee. Id.
In the instant case, there is no dispute that Ms. Venson was acting within her role as an employee of CSXI in carrying out the activities which appellants allege constitute the "tortious interference." Indeed, Ms. Venson was a signatory to the subject contracts and appellants' breach of contract claims against CSXI are expressly based on their allegation that Ms. Venson was acting as a CSXI employee in dispatching loads for CSXI. Further, appellants have identified no record evidence which would establish that Ms. Venson acted solely with ulterior purposes and without an honest belief that her actions would benefit CSXI. Id. Thus, based on the undisputed facts before it, the trial court did not err in granting summary judgment on the tortious interference counts.
Accordingly, we affirm in part, reverse in part, and remand this cause for further proceedings consistent with this opinion.
BOOTH, J., concurs.
COSTELLO, DEDEE S., Associate Judge, concurs and dissents with written opinion.
COSTELLO, DEDEE S., Associate Judge, concurs and dissents.
I concur with the affirmance of the summary final judgment in favor of Helen *1100 Venson, but respectfully dissent as to the reversal of the summary judgment for CSXI.
The majority finds that the terms of the contract between the parties are unambiguous and thus nonmodifiable either by a course of dealing between the parties or by any subsequent oral agreement. If the terms are clear and express, then the implied obligation of good faith cannot vary the contract terms, see City of Riviera Beach v. John's Towing, 691 So.2d 519, 521 (Fla. 4th DCA 1997) and Riedel v. NCNB Nat'l Bank of Florida, 591 So.2d 1038, 1040 (Fla. 1st DCA 1991). Here the contract provides in direct, simple, express, unambiguous language that CSXI is not required "to furnish ... any specific amount of freight or numbers of loads for transport by contractor at any particular time or to any particular place."
The trial court found this language plain and clear and refused to construe the terms in a manner explicitly disavowed by the parties; i.e., to require the defendants to provide lucrative loads for the plaintiffs.
The majority finds that since there is no methodology or standards spelled out in the contract, the contract is governed by an implied covenant of good faith. They recognize that parties can agree to absolute discretion in one party which would not allow courts to deviate from that agreement.
I respectfully suggest that there is an "express grant of absolute, unlimited discretion to CSXI to assign loads in any manner or for any reason it sees fit," see footnote 2 of majority opinion. Why should we concern ourselves with the "methodology" to be used by CSXI when the contract states that it "shall in no way be construed as an agreement by CSXI to furnish ... any specific amount of freight or number of loads ... to any particular place" (e.s.). Thus, the grant of the summary final judgment by the trial court was correct and should be affirmed by this court.
I concur with the affirmance of the summary judgment for Helen Venson and would also affirm the summary judgment for CSXI.
NOTES
[1] Paragraph 32 of each of the subject contracts provides that "[t]his agreement shall be governed by the laws of the State of New Jersey both as to interpretation and performance." The trial court concluded that the law of New Jersey is no different from the law of Florida on the contract issues governing this action and did not address the choice of law issues. The parties do not dispute the trial court's conclusion.
[2] We note that the instant contracts contain no express grant of absolute, unlimited discretion to CSXI to assign loads in any manner or for any reason it sees fit. Substantial discretion, of course, is implied from the provisions of paragraph 4 of the contracts which disclaims any right in appellants to any specific amount of freight or number of loads. Under the facts of this case, it is not necessary for us to address whether an express grant of absolute discretion may constitute a waiver or disavowal of the implied covenant of good faith and fair dealing. Compare e.g., Tymshare, Inc. v. Covell, 727 F.2d 1145, 1153 (D.C.Cir.1984)("[I]t is possible to so draw a contract as to leave decisions absolutely to the uncontrolled discretion of one of the parties and in such a case the issue of good faith is irrelevant"); Beck v. Farmers Ins. Exchange, 701 P.2d 795, 801 n. 4 (Utah 1985)("The duty to perform the contract in good faith cannot, by definition, be waived by either party to the agreement."); and section 671.102(3), Florida Statutes (1997)("[T]he obligations of good faith, diligence, reasonableness and care prescribed by this code may not be disclaimed by agreement but the parties may by agreement determine the standards by which performance of such obligations is to be measured if such standards are not manifestly unreasonable."); see also Thomas A. Diamond & Howard Foss, Proposed Standards for Evaluating When the Covenant of Good Faith and Fair Dealing Has Been Violated: A Framework For Resolving the Mystery, 47 Hastings L.J. 585, 624-628 (1996).
[3] Although appellants' breach-of-contract claims are, pursuant to their contracts, governed by New Jersey law, under Florida choice-of-law rules, their tort claims would likely be governed by Florida law. See Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1001 (Fla.1980)(adopting "significant relationships test" as Florida choice-of-law rule for torts). In any event, with respect to the tortious interference claim, there is no substantive difference between Florida law and New Jersey law. See, e.g., Kopp, Inc. v. United Technologies, Inc., 223 N.J.Super. 548, 539 A.2d 309, 315 (N.J.Super.1988)("it is fundamental to a cause of action sounding in tortious interference with contractual obligations that the claim be directed against a third party. A party cannot be guilty of inducing the breach of its own contract.").