[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-11632

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 9, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-22096-CV-KMM

CENTURION AIR CARGO, INC.,
f.k.a. Challenge Air Cargo, Inc.,

Plaintiff-Appellant,

versus

UNITED PARCEL SERVICE CO.,

Defendant-Appellee.

_____

No. 04-12922

_____

D. C. Docket No. 02-21656-CV-JLK

CENTURION AIR CARGO, INC.,
f.k.a. Challenge Air Cargo, Inc.,
PETER ULLRICH,

Plaintiffs-Appellees,

versus

UNITED PARCEL SERVICE CO.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(August 9, 2005)**

Before DUBINA, PRYOR and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

This decision involves two cases consolidated on appeal.  In the "Moore litigation,"[1] plaintiff-appellant Centurion Air Cargo, Inc. ("Centurion") appeals the district court's orders granting summary judgment in favor of defendant-appellee United Parcel Service Co. ("UPS") on Centurion's claims for breach of contract and other related causes of action.  In the "King litigation,"[2] UPS appeals the district court's denial of its motion to hold Centurion in contempt of court for failure to comply with a prior judgment.

## I.

In October 1999, UPS and Centurion entered into a purchase agreement,

---

[1]Case number 04-11632, an appeal from orders by the Honorable K. Michael Moore, United States District Judge for the Southern District of Florida.  As the principal parties in both consolidated cases are the same, we follow the custom of the briefs in calling each case by the name of the presiding district judge.

[2]Case number 04-12922, an appeal from an order by the Honorable James Lawrence King, United States District Judge for the Southern District of Florida.

2

under which UPS purchased substantially all of Centurion's assets. Centurion, an air cargo and transportation service corporation based in Miami, Florida, retained certain liabilities under the purchase agreement, including those arising from an action against Centurion in Costa Rica (the "Carga Aerea litigation"). The purchase agreement required Centurion to indemnify UPS for any liabilities incurred because of the Carga Aerea litigation in excess of $200,000, that being the liability amount listed on Centurion's balance sheet at the time of purchase. Subsequently, the two parties entered into a post-closing agreement, which further defined their obligations and rights in the transaction. Under the post-closing agreement, UPS agreed to make monthly installment payments of $871,518.00 to Centurion for certain transitional services not relevant here.

Section 11.04 of the purchase agreement provided UPS with a right of offset against Centurion "if [UPS] obtains a final, nonappealable judicial order or binding arbitral decision in [UPS's] favor that [Centurion] is obligated to indemnify [UPS]" for, inter alia, liabilities arising out of the Carga Aerea litigation. Section 3(g) of the post-closing agreement provided that the set-off provision, Section 11.04 of the purchase agreement, would apply to the monthly payments.

Several months after the purchase, the plaintiff in the Carga Aerea litigation

3

attached UPS's Costa Rican assets and garnished UPS's Costa Rican revenues in anticipation of a final judgment against Centurion. Pursuant to a separate settlement agreement between UPS and Centurion, UPS then filed an emergency motion in an already pending arbitration before the American Arbitration Association ("AAA"). The motion sought to force Centurion to post a bond with the Costa Rican court to dissolve the attachment and garnishment. In May 2002, the arbitrator ordered Centurion to post the bond in the amount of $821,106.09 or any lesser amount that would dissolve the attachment and garnishment.

The parties respectively petitioned the district court to vacate or confirm the arbitration order. A few days after the arbitration order, in early June 2002, UPS was four days late making its monthly installment payment to Centurion. When the July payment came due, UPS informed Centurion that it was exercising a set-off of $821,106.09 from the regular monthly payment. UPS then posted a bond in the Costa Rican court of the same amount and in Centurion's name.

The district court, per Judge King, issued a confirmation judgment requiring Centurion to comply with the arbitrator's order. Centurion still refused to post a bond. In March 2004, a magistrate judge recommended that Centurion be held in contempt of court for its failure to comply. Judge King, however, rejected the magistrate's recommendation and denied the motion, finding that UPS's actions in

4

setting off the necessary funds and posting the bond in Centurion's name were sufficient to satisfy Centurion's obligations and the arbitrator's order. UPS appeals the King litigation from the denial of this contempt motion.

Meanwhile, Centurion filed suit against UPS for breach of contract in July 2002. One count of the complaint alleged breach of the post-closing agreement, while a second count alleged breach of the purchase agreement. Both claims arose out of UPS's set-off of the large majority of the July payment. After a period of discovery, UPS moved for partial summary judgment as to the purchase agreement only, and Centurion moved for summary judgment on both claims. The district court, per Judge Moore, granted UPS's motion on the ground that UPS acted within its contractual rights under the purchase agreement in executing the set-off. UPS then moved for summary judgment as to the post-closing agreement, which the court granted based on Centurion's own prior contention that the post-closing agreement could only have been breached if UPS took the set-off without complying with the purchase agreement. The court also rejected Centurion's allegations of breach of the implied covenant of good faith and fair dealing because no breach of the explicit terms of the contract had occurred, and Centurion's claims for breach of confidentiality because they had not been properly raised in the complaint. Centurion appeals the Moore litigation from

5

these grants of summary judgment.

## II.

We review the district court's grant of summary judgment <u>de novo</u>, applying the same legal standards as the district court, and construing the facts and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party. <u>Cuesta v. School Bd. of Miami-Dade Co.</u>, 285 F3d 962, 966 (11th Cir. 2002).

1.    <u>Breach of Purchase Agreement</u>

Under Section 11.04 of the purchase agreement, UPS must prove two things in order to offset an indemnity against its payments to Centurion without breaching the agreement: (1) that it obtained a "binding arbitral decision" against Centurion and (2) that the decision obligated Centurion to indemnify UPS. Centurion claims that genuine issues of material fact remain as to whether UPS has shown either of these elements.

First, Centurion claims that the arbitrator's order was not a "binding arbitral decision" at the time of the set-off because the order was still awaiting confirmation from the district court.[3]  Other circuits have held that an order from

---

[3]For support, Centurion cites the Federal Arbitration Act, 9 U.S.C. § 10.  That statute, however, only governs the district court's consideration of motions to vacate an existing arbitration order; it has no effect on the validity of the order itself.  <u>Id.</u>

an AAA arbitrator is binding unless the parties expressly agree otherwise, and does not require affirmation from a court to bring it into effect. See, e.g., McKee v. Home Buyers Warranty Corp., 45 F.3d 981, 983 (5th Cir. 1995); Rainwater v. Nat'l Home Ins. Co., 944 F.2d 190, 193 (4th Cir. 1991). This issue is a matter of first impression for our court. In considering it, we note that the Supreme Court has declared a strong federal policy in favor of arbitration to resolve disputes. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). To adopt a rule that an arbitral decision is not "binding" and thus lacks the authority of a conclusive judgment would run counter to this federal policy and require all winners in arbitrations to seek affirmation in the district court.

We decline to adopt such a rule. Rather, we agree with the Fourth and Fifth Circuits and hold that an arbitrator's order is binding on the parties unless they expressly agree otherwise, and does not require affirmation from a court to take effect. Thus, as a matter of law, the arbitrator's order was a binding arbitral decision at the time of UPS' set-off.

Second, Centurion claims that the arbitrator's order requiring it to post the bond was not an indemnification order. It argues that the order gave UPS no duty to post a bond with the Costa Rican court. UPS, on the other hand, notes that the purchase agreement requires Centurion to "defend, indemnify and hold harmless"

7

UPS "from and against . . . any loss, claim, damage, liability or expense resulting to [UPS] from [inter alia, the Carga Aerea litigation]."

Under Florida law, an indemnity is "a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other, and is allowable only where the whole fault is in the one against whom the indemnity is sought." Houdaille Industries, Inc. v. Edwards, 374 So. 2d 490, 492 (Fla. 1979). UPS has an indemnity right in the present case. It discharged a duty which should have been discharged by Centurion (based on the arbitrator's order)—the posting of the bond. Centurion did not produce any evidence that UPS was at fault in the Carga Aerea litigation.[4] Centurion incurred the liability in the Carga Aerea litigation and specifically retained that liability after the purchase agreement. Furthermore, Centurion explicitly agreed to "indemnify" UPS for liabilities or expenses resulting to it from the Carga Aerea litigation.

As such, we affirm the district court's finding that Centurion failed to present sufficient evidence to overcome summary judgment as to whether UPS

---

[4]Centurion contends, in self-serving affidavits, that UPS improperly disclosed details of the purchase agreement to Carga Aerea which caused Carga Aerea to seek a larger bond than it otherwise would have. This sparse evidence does nothing to suggest that UPS was at fault in the underlying claims in the Carga Aerea litigation, which gave rise to the duty which is the subject of the indemnity.

breached the purchase agreement in exercising its right of offset.

###### 2. Breach of Post-Closing Agreement

Centurion alleges that UPS committed two separate breaches of the post-closing agreement. First, Centurion claims that if it was a breach of the purchase agreement for UPS to take the set-off, this would also constitute a breach of the post-closing agreement. Section 3(g) of the post-closing agreement reads in pertinent part:

> The amounts due and payable subject to this clause [governing the installment payments] shall not be subject to set-off, reduction, or claim of any kind, including without limitation pursuant to Section 11 of the Purchase Agreement, except as set forth in Section 11.04 of the Purchase Agreement.

As we held supra, UPS acted in compliance with Section 11.04 of the purchase agreement in executing the set-off. Furthermore, Centurion admits in its brief that if UPS is not liable for a breach of the purchase agreement in carrying out the set-off, the same logic applies to any claim of a breach of the post-closing agreement. As such, we hold that summary judgment for UPS was proper on this issue.

Centurion also alleges that UPS breached the post-closing agreement by failing to make its June 2002 payment on time. Under Florida law, failure to make a payment on time does not constitute per se a material breach of contract. Rather, to constitute a material breach, the late payment must occur where time is of the

9

essence. Sublime, Inc. v. Boardman's Inc., 849 So.2d 470, 471 (Fla. 4th Dist. Ct. App. 2003). Time is of the essence under Florida law when (1) the agreement explicitly so specifies; or (2) such may be determined from the subject matter of the contract; or (3) treating time as non-essential would produce a hardship; or (4) notice has been given to the defaulting party requesting performance within a reasonable time. Id.

Centurion's only evidence of the materiality of UPS' breach is an affidavit by Peter Ullrich which alleges that Centurion was forced to arrange alternate financing to cover other payments as a result of UPS' delay, and that Centurion therefore was subject to a hardship. As UPS points out, however, there was no evidence of any overdraft by Centurion, any fines or penalties that might result from any overdraft, or any other expenses by Centurion which might constitute damages for breach of contract. Centurion's evidence, therefore, was insufficient to withstand summary judgment on this issue, and we affirm the district court's finding that UPS did not breach the post-closing agreement by its five-day delay in making the June 2005 payment.

### 3.     Breach of Duty of Confidentiality

Centurion asserts that the district court erred in finding that its claim for breach of the duty of confidentiality was not properly pleaded in the Moore

10

complaint. The Federal Rules of Civil Procedure require a short and plain statement of each claim sufficient to put the defendant on notice of the claim. Fed. R. Civ. P. 8(a)(2). The district court refused to consider Centurion's motion for summary judgment for breach of the duty of confidentiality, finding that the complaint did not meet the low threshold established by Rule 8(a)(2). Centurion's brief argues the merits of the breach of confidentiality issue, but makes no substantial effort to argue that the claim was properly pleaded. We agree with the district court that the complaint does not make a "short and plain statement" of the claim for breach of the duty of confidentiality, and therefore affirm summary judgment on that issue.

4. Breach of Implied Covenant of Good Faith and Fair Dealing

Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations. Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1097 (Fla. 1st Dist. Ct. App. 1999). A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation. Id. Centurion contends that UPS violated this covenant by telling Carga Aerea that Centurion had agreed to indemnify UPS under the

11

Purchase Agreement.[5]

This court has held that a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract. See, e.g., Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414 (11th Cir. 1990); Barnes v. Burger King Corp., 932 F. Supp. 1420, 1438-40 (S.D. Fla. 1996). Because we held supra that UPS did not breach the express terms of the Purchase Agreement, Florida law precludes a finding of breach of the implied covenant of good faith and fair dealing. We therefore affirm the district court's grant of summary judgment on this claim.

### 5. Contempt of Court

UPS appeals Judge King's denial of its motion that Centurion be held in contempt for refusing to post the $821,106.09 bond, despite the fact that UPS had already posted the bond in Centurion's name and offset the amount. A magistrate judge found for UPS, but the district judge reversed, finding that the bond and set-off were sufficient to satisfy the confirmation judgment.

On appeal, UPS explains that it preserved this issue only to ensure that it is

---

[5]Centurion also claims that summary judgment was granted prematurely because it was denied discovery of certain documents which were allegedly relevant to UPS's motivations in posting the bond in the Costa Rican court. The district court found, and we agree, that this discovery was irrelevant to the counts in the Moore litigation complaint, which pertain to express breach of the two contracts between the parties. Because this discovery is irrelevant, it does not alter our conclusion that no genuine issues of material fact exist as to Centurion's claims.

12

not subjected to a double obligation. Otherwise, UPS concedes that there is no need for us to address this issue on appeal. As our other holdings in this case remove any danger of a double obligation for UPS, we therefore dismiss UPS' appeal in the King litigation as moot.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court in case number 04-11632, the Moore litigation, and we **DISMISS** as moot the appeal in case number 04-12922, the King litigation.