[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-13889

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUL 12, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-20256-CV-JEM

MOUNT SINAI MEDICAL CENTER OF
GREATER MIAMI, INC.,

                                                                Plaintiff-Appellant,

versus

HEIDRICK & STRUGGLES, INC.,
a Delaware corporation,
HEIDRICK & STRUGGLES INTERNATIONAL, INC.,
a Delaware corporation,

                                                                Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 12, 2006)**

Before TJOFLAT and BARKETT, Circuit Judges, and FULLER[*], District Judge.

_____

[*] Honorable Mark E. Fuller, United States Chief District Judge for the Middle District of
Alabama, sitting by designation.

PER CURIAM:

In this case, a hospital, Mount Sinai Medical Center of Greater Miami, Inc. ("Mt. Sinai"), employed a head hunter, Heidrick & Struggles, Inc. ("H&S"), to identify possible candidates for the position of chief executive officer ("CEO"). The head hunter identified five candidates, providing to Mt. Sinai an "Executive Summary" of each candidate. The hospital's search committee interviewed these candidates and asked four of them to return for further interviews. After these interviews took place, the search committee concluded that each of the four candidates was qualified to serve as CEO. One of the four was Bruce Perry, whose most recent employment was as the CEO of Community Hospitals of Central California. Mt. Sinai hired Perry, and he assumed his CEO duties in January 1999.

According to the allegations of Mt. Sinai's second amended complaint (the "complaint"), Perry proved to be incompetent, and his incompetence caused the hospital to lose millions of dollars. As a result, Mt. Sinai terminated his employment in October 2001.

Mt. Sinai brought this diversity action against H&S in an attempt to recover its losses. Its complaint seeks compensatory damages – the operating losses the hospital sustained during Perry's tenure as CEO and the money it paid to H&S in

2

fees and expenses. The complaint is framed in three counts. Count I alleges that H&S breached its obligation under the contract (the "search contract") to "assist in the identification and selection" of the hospital's CEO and to carry out such obligation in "good faith." Count II alleges that H&S fraudulently induced Mt. Sinai to enter into the search contract by misrepresenting that it was the "world's premier provider of executive level search and leadership," that it would "partner with [Mt. Sinai] with the objectives to build the best leadership team[] in the world by helping [it] hire, develop and retain the most effective leaders in this industry," and that it would identify, evaluate, and recommend qualified candidates for Mt. Sinai's CEO position. Count II further alleges that H&S fraudulently induced Mt. Sinai to hire Perry by misrepresenting his qualifications, including circumstances surrounding his previous employments as a CEO of Children's Hospital in Washington, D.C. and subsequently Community Hospitals of Central California. Count III alleges that Mt. Sinai's contract with H&S made H&S a fiduciary and that the losses Mt. Sinai sustained (while Perry was its CEO) were caused by H&S's breach of that duty.

The district court dismissed Mt. Sinai's Count II claim that H&S fraudulently induced Mt. Sinai to enter into the search on the ground that the complaint is devoid of a misrepresentation of material fact which induced Mt.

3

Sinai to contract for H&S's services. The court treated H&S's representations about the firm's standing in the relevant business community as mere puffing, and we agree. We find nothing in the complaint that could be considered a misrepresentation of a material fact. See Lou Bachrodt Chevrolet, Inc. v. Savage, 570 So. 2d 306, 308 (Fla. 4th Dist. Ct. App. 1990) (stating that a plaintiff seeking to establish fraud in the inducement must prove, inter alia, "[a] misrepresentation of a material fact").[1]

The court dismissed the Count II claim that H&S fraudulently induced Mt. Sinai to employ Perry under the "economic loss rule." We agree, for the reasons the district court gave in its dispositive order of August 29, 2003, that the economic loss rule bars this claim.

In claiming that H&S fraudulently induced it to employ Perry as its CEO, Mt. Sinai is actually saying that H&S breached its obligations under the search contract – that the Executive Summary it provided to the hospital's search

---

[1] Under Florida law, a plaintiff seeking to establish fraud in the inducement must prove the following:
(1) A misrepresentation of a material fact;
(2) The representor of the misrepresentation, [sic] knew or should have known of the statement's falsity;
(3) Intent by the representor that the representation will induce another to rely and act on it;
(4) Resulting injury to the party acting in justifiable reliance on the representation.
Lou Bachrodt Chevrolet, Inc., 570 So. 2d at 308.

committee contained material misrepresentations regarding Perry's previous employments. That is, Mt. Sinai is not relying on acts occurring unrelated to H&S's performance of the search contract. Under Florida's economic loss rule, Mt. Sinai's remedy is for breach of contract, not a tort action. See Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc., 620 So. 2d 1244, 1246 (Fla. 1993); Allen v. Stephan Co., 784 So. 2d 456, 457 (Fla. 4th Dist. Ct. App. 2000) ("[W]here the fraud complained of relates to the performance of the contract, the economic loss rule will limit the parties to their contractual remedies.").

The court also relied on the economic loss rule in dismissing Count III, the breach-of-fiduciary-duty claim. We affirm its ruling on the ground that Count III's allegations fail to state such a claim.

A party seeking to establish the existence of a fiduciary relationship must allege "some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." Barnett Bank of W. Fla. v. Hooper, 498 So. 2d 923, 927 (Fla. 1986). "When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So. 2d 536, 541 (Fla. 5th Dist. Ct. App.

2003). Mt. Sinai does not allege that H&S undertook to perform any duties for Mt. Sinai other than those embodied in the search contract, in which H&S merely agreed, at arm's-length, to perform the discrete service of presenting CEO candidates to Mt. Sinai, an equally sophisticated party. The contract, by its express terms, left to Mt. Sinai the task of ultimately selecting a CEO and did not impose upon H&S any ongoing duties to "advise, counsel, and protect" Mt. Sinai.

This brings us to the district court's disposition of Count I, which the court made in its order of June 30, 2004, granting H&S's motion for summary judgment. The thrust of Mt. Sinai's argument is that H&S breached its duty to discharge its contractual obligations in good faith.

Florida law implies in every contract a covenant of good faith and fair dealing, Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999), which "is designed to protect the contracting parties' reasonable expectations," Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1097 (Fla. 1st Dist. Ct. App. 1999). If a contract "appears by word or silence to invest one party with a degree of discretion" in the performance of its contractual duties, the implied covenant of good faith and fair dealing "limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." Id. at 1097-98. The implied covenant of good faith and fair dealing does not, however,

6

"vary the express terms of a contract," id. at 1098, but, rather, "attaches to the performance of specific contractual obligations," Centurion Air Cargo v. UPS Co., 420 F.3d 1146 (11th Cir. 2005).

H&S concedes that it omitted from Perry's Executive Summary the following facts: (1) that Community Hospitals reported a loss of $11,944,000 during Perry's last year as CEO, which caused Community Hospitals's bonds to be downgraded; and (2) that Perry filed a claim against Community Hospitals for severance pay, which was denied by a panel of arbitrators. Mt. Sinai fails, however, to produce a scintilla of evidence to show that anyone at H&S had been aware of the existence of those facts when H&S prepared the Executive Summary. In his deposition, Christopher Clark, the H&S employee in charge of the Mt. Sinai account, testified that H&S merely reiterated in the Executive Summary information provided by Perry, and Mt. Sinai produced no evidence to countervail Clark's testimony.

Although Clark testified that he was aware of one of the alleged omissions – that Community Hospitals was comprised of 956 beds during only the last two months of Perry's tenure as CEO – H&S made clear in the Executive Summary that Community Hospitals was not comprised of 956 beds during the entirety of Perry's tenure. The Executive Summary states that Community Hospitals was

comprised of "446 staffed acute beds and 300 staffed convalescent beds" when Perry began his term as CEO of the hospital. The Executive Summary provides that Community Hospitals was comprised of "616 staffed acute care beds and 340 staffed convalescent beds," i.e. 956 beds, only at the time Perry left Community Hospitals. H&S therefore clearly represented that the size of Community Hospitals had changed during Perry's tenure, culminating in its enlargement to a 956 bed hospital.

Because the evidence fails to establish that H&S intentionally misrepresented or omitted any facts which would have misled Mt. Sinai as to Perry's professional background, Mt. Sinai is left with a claim that H&S breached its contract with Mt. Sinai by failing adequately to investigate Perry's background. The contract between H&S and Mt. Sinai, however, imposed upon H&S only the duty to "present" to Mt. Sinai CEO candidates, not independently to investigate the backgrounds of those candidates.[1] The contract left with Mt. Sinai the

---

[1] In its memorandum in opposition to H&S's motion for summary judgment, Mt. Sinai asserts:

> If Heidrick & Struggles, one cold night, had gone underneath the MacArthur Causeway Bridge [in Miami, Florida] and selected five homeless persons huddled there against the cold, put them in its van, driven them to Mount Sinai and presented them to the Trustees as candidates for the job of Chief Executive Officer, from the Heidrick's [sic] view of its responsibilities under this contract, it would have fulfilled its contract . . . .

Although we know nothing of the four candidates other than Perry presented to Mt. Sinai, Perry had served as CEO for two hospitals, Children's Hospital and Community Hospitals, which,

discretion ultimately to select a CEO from the candidates presented by H&S. If Mt. Sinai desired further inquiry into Perry's background, it could have performed the inquiry itself or had H&S do so, but, alas, Mt. Sinai chose neither course. Because "the implied obligation of good faith cannot be used to vary the express terms of a contract," CSX Intermodal, Inc., 732 So. 2d at 1098, Mt. Sinai's claim for breach of contract fails.

AFFIRMED.

---

regardless of their financial performances during his tenures, made him at least facially qualified for the CEO position. This case therefore does not present the question of whether H&S would have breached the implied covenant of good faith and fair dealing by presenting to Mt. Sinai "five homeless persons" or five persons otherwise utterly lacking in qualification to serve as CEO for Mt. Sinai.